IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAMELA K. S.,[1] | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-cv-1112-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
|       Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in February 2018, alleging disability as of September 9, 2016. After holding an evidentiary hearing, an ALJ denied the application on April 18, 2019. (Tr. 13-26). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ cherry-picked visits and findings that support the RFC.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 13 & 27.

2. The ALJ's decision fails to properly evaluate Plaintiff's migraines.

3. The ALJ ignored Plaintiff's testimony and, therefore, erred in assessing Plaintiff's credibility.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was,

in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. She determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. Plaintiff is insured for DIB through December 31, 2021.

The ALJ found that Plaintiff had severe impairments of status-post right hip replacement, left femur sclerosis with mild left hip osteoarthritis, post-traumatic stress disorder (PTSD), borderline personality disorder, major depressive disorder, irritable bowel syndrome, migraine, aural vertigo, bilateral sensorineural hearing loss, and anxiety disorder.

The ALJ found that Plaintiff has the residual functional capacity (RFC) to:

> Perform a range of sedentary work…the claimant is able to lift up to ten pounds occasionally. She is able to stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is unable to climb ladders/ropes/scaffolds or crawl, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, and crouch. The claimant should avoid even occasional exposure to pulmonary irritants, such as fumes, odors, dust, gases, chemicals, and

poorly ventilated areas. She should avoid all exposure to unprotected heights and use of dangerous moving machinery. She is limited to occupations that do not require fine hearing capability, meaning only occasional hearing required in large group settings. She is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes. She can tolerate no direct interaction with the public, and only occasional interaction with coworkers. The claimant is limited to jobs that can be performed while using a handheld assistive device, such as a cane, only for uneven terrain or prolonged ambulation, and the contralateral upper extremity can be used to lift/carry up to the exertional limits. The claimant should be allowed to sit for no more than 40 minutes and stand for no more than 30 minutes, provided she is not off task while changing positions.

Plaintiff has no past relevant work. Based on the testimony of a vocational expert (VE), the ALJ concluded that Plaintiff was not disabled because she was able to do jobs that exist in significant numbers in the national economy.

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to Plaintiff's arguments.

**1.    Agency Forms**

Plaintiff was born in 1972 and was 46 years old on the date of the ALJ's decision. (Tr. 262). Plaintiff said she stopped working in 2016 because of her conditions. Plaintiff worked as a radiology technician from 1995 to 2004, a medical service corps officer from 2005 to 2016, and an independent consultant from 2016 to present. (Tr. 250-51).

In a Function Report submitted in 2018, Plaintiff said she has issues with sitting and standing for thirty minutes or more; migraines; and pain with her knees, pelvis, and lower back. Plaintiff said she attends medical appointments every day. Plaintiff's conditions affect her ability to sleep, dress, and bathe herself. Plaintiff said her two daughters complete ninety percent of the household chores, and she cannot do yardwork. Plaintiff said she cannot take part in as many

hobbies and interests anymore. Plaintiff said her conditions affect her squatting, bending, standing, reaching, walking, sitting, kneeling, task completion, and concentration. Plaintiff said she can walk only one to two blocks before resting. Plaintiff said she uses crutches, a walker, and a brace/splint prescribed by a doctor, and she uses a wheelchair and a cane that are both not prescribed by a doctor. (Tr. 267-73).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in February 2019. Plaintiff testified she receives disability from the Veterans Administration (VA), and she is disabled through the VA. Plaintiff testified to using braces, a cane, a sacroiliac belt, and a walker. Plaintiff said she gets injections that last no more than two months. (Tr. 45-47). She said she can sit only thirty to forty minutes and can only stand for about twenty to thirty minutes. The heaviest thing she lifted a month prior was a bag of groceries or a gallon of milk. Her daughters help her with a lot of the household chores. (Tr. 53-57). Plaintiff testified that she lies down three to five hours a day. (Tr. 60). Plaintiff said she would be going to twelve to fifteen appointments a month for her impairments. (Tr. 65).

The ALJ presented hypotheticals to the VE which corresponded to the ultimate RFC findings. The VE testified this person could do jobs such as hand packer positions, production worker positions, and inspector/tester/sorter positions. The VE testified that an employer will not retain an employee who misses work once a month or takes unscheduled breaks. (Tr. 68-72).

### 3. Relevant Medical Records

Plaintiff filed a disability claim through the VA on August 18, 2016. (Tr. 1031). Sabrina Jordan-Childs, a family medicine specialist, noted Plaintiff had congenital hip dysplasia; primary degenerative/osteoarthritis of the right hip; bilateral knee degenerative/osteoarthritis; chronic

myalgias; chronic pain syndrome suggestive of Fibromyalgia; lumbosacral spine and bilateral ankle degenerative/osteoarthritis; bilateral lower extremity radiculopathy; and chronic cervical and thoracic spine strain/sprain. (Tr. 1035-36). Dr. Jordan-Childs said Plaintiff's cervical spine condition did not impact her ability to work but her thoracolumbar spine condition did. (Tr. 1070, 1081). Dr. Jordan-Childs noted evidence of pain with weight-bearing and pain on palpation of the lumbosacral spine. (Tr. 1073). Dr. Jordan-Childs said the examinations were medically consistent with Plaintiff's statements. (Tr. 1074).

Between August 18, 2016 and January 2019, Plaintiff underwent more than eighty physical therapy appointments to address low back, hip, tailbone, and leg pain.[3]

Plaintiff presented to Jamie Blessing-Calcarone, a physician assistant, on August 19, 2016, complaining of back, hip, and knee pain. (Tr. 2695). The assessment included unspecified joint pain. (Tr. 2699).

Between September 2016 and April 2018, Plaintiff underwent more than thirty chiropractic appointments to address low back pain, mid back pain, neck pain, and migraines.[4] Plaintiff presented to Charles Portwood, a chiropractor, on September 12, 2016, reporting having migraines three to four times per week with photo/phonophobia. (Tr. 2676).

Plaintiff presented to Darah Dodt, a nurse practitioner, on September 29, 2016, complaining of bilateral knee pain and chronic back pain. (Tr. 509). A physical exam revealed knee pain on palpation and limited range of motion. Plans included medications, an arthrogram, injections, and physical therapy. (Tr. 511-12).

---

[3] The corresponding transcript pages are 489, 494, 496, 497-99, 501, 503, 505, 507, 515, 517, 521, 524-25, 529, 533-34, 538, 542-43, 547, 552, 556, 559, 561, 565, 613, 615, 617, 619, 621, 623, 625, 627, 629, 631-36, 737-45, 747, 749, 751, 753, 755, 757, 759, 761, 763-67, 884, 943, 945, 3066, 3073, 3075, 3077, 3378, 3383, 3497, 3500, 3508, 3510, 3512, 3530, 3536, 3538, 3544, 3547, 3549, 3553.
[4] The corresponding transcript pages are 642, 644-53, 963, 1215, 1632, 1634-35, 1637-38, 1641, 2602, 2607, 2618, 2636, 2647, 2656, 2669, 2676.

Between October 2016 and February 2018, Plaintiff underwent MRI's of her spine, pelvis, and femur, in which the impressions included normal conditions, healed conditions, or unremarkable conditions. (Tr. 351, 513-14, 779-82, 784-86).

Between October 2016 and December 2018, Plaintiff underwent more than fifteen appointments for injections to address coccyx, low back, and knee pain. (Tr. 352, 355, 365, 530, 535, 539, 544-45, 553, 562, 581, 592, 600, 888, 1127, 3473, 3476).

Plaintiff presented to JoAnn Adams, a nurse practitioner, on October 26, 2016, complaining of bilateral knee pain. Plaintiff underwent a bilateral knee arthrography with a radiologic examination. The diagnosis included bilateral primary osteoarthritis of the knee, and plans included further injections and radiologic examinations. (Tr. 526-27).

Plaintiff presented to Wendy Singleton, a family medicine physician, on October 28, 2016. Plaintiff reported migraines and chronic joint pain. Plans included medication. (Tr. 2628, 2632).

Between November 2016 and March 2017, Plaintiff underwent three nerve block appointments for coccyx pain. (Tr. 539, 571, 581). Between November 2016 and May 2017, Plaintiff underwent x-rays of her hips, knee, pelvis, sacrum[5], and coccyx[6], and the impressions were negative, unremarkable, unchanged, or normal. (Tr. 347, 364, 796-99).

Plaintiff presented to Ryan Nunley, an orthopedic surgeon at Washington University, on November 9, 2016, reporting hip pain. A physical exam revealed right hip and groin pain; a positive Patrick test[7]; and a positive anterior impingement test. Plans included an MRI arthrogram of the right hip. (Tr. 364).

---

[5] Sacrum refers to, "The triangular bone at the base of the spine formed by usually five fused vertebrae wedged dorsally between the two hip bones." https://medical-dictionary.thefreedictionary.com/sacrum, visited on July 8, 2020.

[6] Coccyx refers to, "The small bone at the end of the vertebral column in humans, formed by the fusion of four rudimentary vertebrae; it articulates above with the sacrum." https://medical-dictionary.thefreedictionary.com/coccyx, visited on July 8, 2020.

[7] Patrick test refers to, "a test to determine the presence or absence of sacroiliac disease." https://medical-dictionary.thefreedictionary.com/patrick+test, visited on July 8, 2020.

Plaintiff presented to NP Dodt on November 14, 2016, complaining of bilateral knee pain and chronic back pain. (Tr. 548). A physical exam revealed pain on palpation and limited range of motion of both knees. Diagnoses included bilateral primary arthritis of the knees. (Tr. 550-51).

Plaintiff presented to DC Portwood on November 15, 2016, and November 28, 2016, reporting migraines at the top of her head, with one having been present for three weeks. (Tr. 2602, 2607).

Plaintiff presented to Dr. Nunley on November 30, 2016. Dr. Nunley said the nonoperative hip treatments were ineffective. Plans included a right total hip arthroplasty. (Tr. 363).

Plaintiff presented to Melinda Tripp, a VA medical center (VAMC) nurse practitioner, on December 13, 2016. (Tr. 1490). Plaintiff reported having six to seven headaches within the past two months and missing one to two days a week due to headaches. NP Tripp noted Plaintiff's headache condition impacted her ability to work. (Tr. 1512-13).

Plaintiff presented to Douglas Hobaugh, a dentist, on December 23, 2016. (Tr. 1454). Dr. Hobaugh opined that Plaintiff's temporomandibular (TMJ) condition does not impact her ability to work. (Tr. 1460).

Plaintiff underwent a TMJ MRI in January 5, 2017, and the impression was, "1. Anterior subluxation of the right mandibular condyle, with minimal anterior translation…2. Anterior displacement of the left disc, without reduction. Findings are suspicious for a tear of the disc." (Tr. 3022).

Plaintiff presented to Philip Poepsel, an internist, and Dr. Jordan-Childs on January 9, 2017, for a medical opinion on VA disability. (Tr. 1352). Dr. Poepsel noted pain without weight bearing and pain with range of motion. (Tr. 1356). Dr. Jordan-Childs noted Plaintiff's back condition impacted her ability to work. (Tr. 1413). Dr. Jordan-Childs noted a diagnosis of

congenital hip dysplasia, primary degenerative/osteoarthritis; lumbosacral spine, bilateral knee, and bilateral ankle degenerative/osteoarthritis and/or inflammatory arthritis; non-degenerative, inflammatory arthritis; chronic myalgias and chronic pain syndrome; chronic bilateral foot strain/sprain; and bilateral upper extremity radiculopathy. (Tr. 1369).

Plaintiff underwent hip surgery on January 19, 2017. (Tr. 360-62).

Plaintiff presented to NP Dodt on February 13, 2017, complaining of bilateral knee pain and coccyx pain. (Tr. 567). NP Dodt noted Plaintiff had an antalgic gait; pain on palpation; limited range of motion; a positive bilateral straight leg raise; bilateral medial and lateral edema; bilateral hypertrophy; and bilateral muscular atrophy. Diagnoses included knee pain and coccyx arthritis, and plans included a bilateral knee genicular block and a coccyx block. (Tr. 569-70).

Plaintiff presented to Dr. Nunley on February 22, 2017, reporting feeling one hundred times better than before surgery and right knee pain. A physical exam revealed some abductor weakness and leaning to the side. Plans included hip abductor strengthening exercises. (Tr. 359).

Plaintiff presented to NP Adams on February 23, 2017, reporting severe bilateral knee pain. (Tr. 573). NP Adams noted Plaintiff had bilateral pain on palpation and bilateral limited range of motion. Diagnoses included bilateral primary osteoarthritis of the knee, and plans included medications and follow up appointments. (Tr. 575-76).

Plaintiff presented to Thomas Hodgkiss, a radiologist, on March 2, 2017, and March 9, 2017, and underwent radiofrequency ablations to address knee pain. (Tr. 577, 579).

Plaintiff presented to NP Weiss on May 10, 2017, reporting back pain, bilateral knee pain, and only thirty percent relief from injections. (Tr. 584). NP Weiss noted lumbar spine pain on palpation; limited range of motion; and a positive straight leg raise. Plans included follow-up appointments. (Tr. 586-87).

Plaintiff attended a pain management consult at the VAMC on May 25, 2017. (Tr. 959). Plaintiff presented to Debra Boyd, a licensed practical nurse, with an ambulatory, unsteady gait. (Tr. 1615-16).

Plaintiff underwent a spine lumbosacral x-ray on May 26, 2017, and the impression was, "Mild degenerative disc disease at L1-2."

In 2017, Plaintiff presented to Andrew Hall, a chiropractor, on June 7th, 9th, and 15th. Plaintiff reported waking up with headaches every morning and having two migraines weekly for six months. (Tr. 642-44, 963).

Plaintiff presented to Dr. Nunley on June 14, 2017, reporting leg and calf pain. A physical exam revealed excellent hip motion, a positive straight leg raise, and positive low back pain. Impressions included pain coming predominantly from her back but not her hip. Plans included a low back evaluation and a one-year hip surveillance visit. (Tr. 358).

Plaintiff presented to NP Dodt on July 5, 2017. NP Dodt noted an antalgic gait, pain on palpation, limited range of motion, and a positive bilateral straight leg raise. Plans included continuing chiropractic care, injections, follow-ups, and medication. (Tr. 590-91).

Plaintiff presented to Angela Ryerson, a VAMC physician, on July 6, 2017, complaining of low back, hip, and coccyx pain. (Tr. 1305-06). Plans included an endoscopy for knee pain and medication. (Tr. 1308). Plaintiff also presented to LPN Boyd complaining of constant low back and tailbone pain. LPN Boyd noted Plaintiff's self-report of pain corresponded with her nonverbal pain behaviors. (Tr. 1778-79).

In 2017, Plaintiff presented to DC Hall on July 7th, July 11th, and July 21st reporting a migraine at a one out of ten, a six out of ten, and a four out of ten. (Tr. 645-46).

Plaintiff presented to Christopher Helton, an orthotist and prosthetist, on July 24, 2017, to

address a leg length discrepancy and was given a shoe lift. (Tr. 930-31).

Plaintiff presented to DC Hall on August 1, 2017, reporting a migraine at a three out of ten. (Tr. 647).

Plaintiff presented to Asma Malik, a neurologist, on August 3, 2017, regarding migraines that occurred three times weekly. Plans included potential botox injections. (Tr. 923-24).

Plaintiff presented to Colleen Linsenmayer, a VAMC clinical pharmacy specialist, on August 4, 2017, complaining of migraines. (Tr. 897). Plaintiff received Eletriptan for migraine treatment as other medications had failed. (Tr. 900, 1674).

Plaintiff presented to Adam LaBore, an orthopedic surgeon, on September 12, 2017. A physical exam revealed ambulation with antalgia over the right side; no symptom impact from lumbar range of motion; and a seated straight leg raise that had readily provocative typical symptoms on the right without directional bias. Impressions included right piriformis[8] syndrome status post right total hip replacement and recurrent left hip pain/impingement. Plans included physical therapy, medication, and hip injections. (Tr. 356-57).

Plaintiff presented to Dr. Ryerson on October 2, 2017, for coccyx pain, a low back pain referral, and an orthopedic referral for knee and hip injections. (Tr. 1299-1300). A physical exam revealed difficulty getting up and right knee decreased range of motion. Plans included referrals. (Tr. 1302). The same day, LPN Boyd said Plaintiff's self-report of pain corresponds with her nonverbal pain behaviors, such as grimacing. (Tr. 1336). Plaintiff underwent a hip and pelvis x-ray, and the impression was, "Mild osteoarthritic changes of the left hip." Plaintiff also underwent a left knee x-ray, and the impression was, "Bilateral lateral patellar tilt. Generally maintained joint spaces in both knees. No acute or healing fractures. No significant degenerative changes." (Tr.

---

[8] Piriformis refers to, "A muscle in the pelvic girdle that is closely associated with the sciatic nerve." https://medical-dictionary.thefreedictionary.com/piriformis, visited on July 8, 2020.

791-93).

Plaintiff presented to Katherine House, a nurse practitioner, on October 3, 2017, complaining of back pain. (Tr. 595). NP House noted an antalgic gait; lumbar pain on palpation; and bilateral positive straight leg raises. Plans included physical therapy, chiropractic treatment, injections, and medications. (Tr. 597-98).

Plaintiff presented to Dr. Malik on October 5, 2017, complaining of having migraines two to three times weekly. (Tr. 1270-71). Plans included medications. (Tr. 1274). Plaintiff underwent a whole-body bone scan, and the impression was, "1. Right hip prosthesis without evidence of loosening or infection. 2. Focal area of intense radiotracer uptake in the medial aspect of distal left femur, consistent with active bone remodeling…" (Tr. 787-88).

Plaintiff presented to PA Blessing-Calcarone on October 6, 2017, for a physical therapy referral regarding tailbone pain. Plaintiff reported the pain having been present for a year. (Tr. 2385). Plaintiff received a physical therapy referral for "pain in unspecified hip." (Tr. 2389).

Plaintiff presented to Dr. Helton, a prosthetist, on October 17, 2017, and received a shoe lift. (Tr. 1688).

Plaintiff presented to Francis Madamba, a dental surgeon, at the VAMC on October 20, 2017. (Tr. 1547). Dr. Madamba noted Plaintiff could only open her mouth ten millimeters due to TMJ disorder. (Tr. 1549-50). The primary diagnosis was arthralgia of the right TMJ. (Tr. 1547).

Plaintiff presented to NP Adams on October 31, 2017, reporting coccyx pain and relief after injections. (Tr. 603). NP Adams noted an antalgic gait; coccyx pain on palpation; limited range of motion; and a positive bilateral straight leg raise. Plans included continuing physical therapy, continuing chiropractic care, using a brace, medications, and follow up appointments. (Tr. 605-06).

Plaintiff presented to Beth Lane, an orthopedic nurse practitioner, on November 6, 2017, for an orthopedic surgery consult. (Tr. 892-93). A physical exam revealed mild sacroiliac and hip tenderness. The impression included osteoarthritis of the bilateral knees, left distal femoral lesion, left hip osteoarthritis, chronic low back and pelvic pain, and degenerative disc disease. (Tr. 895).

Plaintiff underwent an x-ray of her femur on November 6, 2017, and the impression was, "Little change in the indeterminate distal femoral lesion with irregular sclerosis and faint surrounding lucency, no change in the differential diagnosis provided on a recent MRI from 10/20/2017. No new findings." (Tr. 783).

Between November 2017 and December 2018, Plaintiff underwent over ten acupuncture appointments for knee, pelvis, and sacrum pain. (Tr. 1135, 1162, 1190, 1196, 1601-02, 3434, 3439, 3441-43, 3480, 3485).

In 2017, Plaintiff presented to DC Hall on November 17th and 21st reporting a migraine at an eight out of ten and later a migraine at a one out of ten. (Tr. 649, 651).

Plaintiff presented to Carol Crooks, a pain physician, on December 12, 2017, complaining of low back pain. (Tr. 877-78). A physical exam revealed asymmetrical ambulation and aggravation of pain with lumbar movement. Plaintiff underwent acupuncture, and recommendations included hamstring stretches. (Tr. 881-83).

Plaintiff presented to Dr. Malik on January 4, 2018, complaining of migraine headaches. A physical examination revealed a limp. (Tr. 1266-67). The impression included, "Migraine without aura, controlled on current regimen." Plans and recommendations included continuing medications and potential botox. (Tr. 1270). Plaintiff also presented to LPN Boyd for unrelated issues. LPN Boyd noted Plaintiff's self-report of pain regarding her knees, feet, pelvis, hip, and jaw did not correspond with her nonverbal pain behaviors. (Tr. 1333).

Plaintiff presented to NP Lane on February 8, 2018, complaining of chronic bilateral hip, knee, and low back pain. (Tr. 1608-09). A physical examination revealed mild sacroiliac tenderness and mild hip tenderness. The impression included osteoarthritis of the bilateral knees, left hip osteoarthritis, chronic low back pain, chronic pelvic pain, and degenerative disc disease. Plans included knee injections, hip injections, and continuing physical therapy. (Tr. 1612).

Plaintiff presented to Dustin Altmann, an oral surgeon, at Mercy Hospital St. Louis on February 13, 2018, and underwent a TMJ arthroplasty. The diagnosis was bilateral TMJ disk disorder and joint arthralgia. (Tr. 671-72).

Plaintiff underwent an x-ray of her femur on February 17, 2018, and the impression was, "Irregular sclerotic change seen in the distal medullary cavity of the femur and in no interval change. No new fracture or periosteal reaction." (Tr. 782-83).

Plaintiff presented to Angela Brock, a VAMC nurse practitioner, on March 2, 2018, complaining of migraines and chronic low back, tailbone, bilateral hip, and leg pain. (Tr. 1199-1200). A physical examination revealed a slow, antalgic gait; hypersensitivity; and a positive straight leg raise. (Tr. 1203-04). The impression included chronic pain syndrome. (Tr. 1206).

Plaintiff presented to Ruth Sulser, a psychologist, on March 2, 2018, for an Interdisciplinary Pain Rehabilitation (IPR) Program evaluation to address once-weekly migraines, back pain, hip pain, and jaw pain. (Tr. 1206-07). Dr. Sulser rated Plaintiff as having a high degree of catastrophic thinking and moderate levels of rumination and magnification regarding pain perception. (Tr. 1210).

Plaintiff presented to Siresha Samudrala, a VAMC physiatrist, on March 28, 2018, complaining of back pain and migraines. (Tr. 845). Dr. Samudrala noted an antalgic gait; limited range of motion; tenderness on palpation; and an inability to perform a straight leg raise. (Tr. 849).

Plaintiff presented to LPN Boyd on April 2, 2018. LPN Boyd noted Plaintiff's self-report of pain corresponded with her nonverbal pain behaviors. (Tr. 1775).

Plaintiff presented to Gary Miller, an orthopedic surgeon, on May 16, 2018, complaining of chronic bilateral hip, knee, and low back pain. A physical exam revealed no tenderness with either the right or left knee. The disposition included left distal femoral lesion and osteoarthritis of the bilateral knees. (Tr. 1128-29).

Plaintiff presented to Dr. Malik on June 28, 2018, complaining of migraines that are well-controlled, and plans included medication modifications. (Tr. 3416-17, 3421).

Plaintiff presented to April Schmidt, a nurse practitioner, on November 20, 2018, for a neurosurgery consult regarding low back pain and coccyx issues. NP Schmidt noted a nontender lumbar spine and bilateral sacroilial joints. (Tr. 3364-67). Recommendations included coccygeal injections, an orthopedic consult for evaluation of femur findings, and tests. (Tr. 3371).

Plaintiff underwent a TMJ x-ray on November 30, 2018. The impression was, "Large tear of the disc with displaced and/or debrided material resulting in mostly absent disc visualization, marked narrowing of the joint space, prominent degenerative change of the mandibular condyle head and markedly reduced range of motion." (Tr. 3265). Another interpretation was, "Complete tear and displacement of the disc which is not visible. Significant osteoarthritic changes and reduced range of motion." (Tr. 3269).

Plaintiff presented to NP Schmidt on December 12, 2018, for a neurology appointment regarding low back and coccygeal pain. (Tr. 3355). Plaintiff underwent electromyogram and nerve conduction velocity studies. The conclusion was, "…a normal study of the legs…no evidence for neuropathy or radiculopathy…" (Tr. 3372).

Plaintiff presented to Dr. Malik on December 20, 2018, complaining of having migraines

two to three times weekly. (Tr. 3411). The impression was, "Migraine without aura- reasonably well controlled." Recommendations included continued migraine treatment. (Tr. 3415-16).

## Analysis

First, Plaintiff argues that the ALJ cherry-picked visits and findings that support the RFC. Plaintiff alleges that the ALJ's decision fails to mention certain findings and visits that support a more restrictive RFC.

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). The ALJ must consider all relevant evidence. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); 20 C.F.R. § 404.1545 (a)(1) and (3). Moreover, the ALJ must "engage sufficiently" with the medical evidence. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). The ALJ "need not provide a complete written evaluation of every piece of testimony and evidence." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (citation and internal quotations omitted). However, the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. The ALJ "cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

This Court agrees that the ALJ cherry-picked certain visits and findings. There are multiple medical records that indicate back, hip, and leg pain, both objectively and subjectively. Plaintiff underwent numerous x-rays and MRI's, over eighty physical therapy appointments, over thirty chiropractic appointments, over fifteen injection appointments, three nerve block appointments,

over ten acupuncture appointments, and other various appointments in which pain was either subjectively or objectively noted. Various things were noted such as positive straight leg raise tests, limited range of motion, tenderness on palpation, and an antalgic gait.

There certainly was subjective and objective evidence of improvement. Nevertheless, that evidence of improvement does not negate the fact that the ALJ failed to engage sufficiently with the evidence contrary to the ALJ's opinion. Although the ALJ did not ignore the objective evidence in its entirety, the ALJ's decision did not adequately reflect the plentiful number of objective findings against her opinion and instead focused more on the objective evidence supportive of her opinion. Defendant argues that the ALJ did not ignore certain medical evidence. However, what Defendant fails to address is how the ALJ may not have engaged sufficiently with the medical evidence, which is what happened here. The ALJ failed to build the logical bridge between the evidence and her conclusions.

Second, Plaintiff argues that the ALJ's decision fails to properly evaluate Plaintiff's migraines. Plaintiff alleges that, although Plaintiff's migraines have decreased in number and in severity, they still occur once a week for an hour at a time, which would require an hour break for each migraine and would keep Plaintiff from sustaining employment.

"The ALJ's RFC determination in this case…are conclusory and are based on findings that failed to address the record as a whole." *Moore*, 743 F.3d at 1121-22. The ALJ must acknowledge evidence contrary to their decision or even give reason as to why they credited certain evidence over others. *Id*. at 1123. "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected…The ALJ simply cannot recite only the evidence that is supportive of her ultimate conclusion without acknowledging and addressing the significant contrary evidence in the record." *Id*. at 1123-24. If a person experiences incapacitating migraines

once or twice weekly, they would not be able to work. *Id*. at 1126. An ALJ's decision must discuss the likelihood of migraine-related breaks or absences from work. *Id*. at 1127.

The ALJ discussed Plaintiff's migraines in one to two paragraphs. The ALJ discussed how Plaintiff had migraines for fifteen years; how she used to have them three times a week; how they decreased to once a week and subsided within one hour of taking medication; and how the migraines were well controlled, according to a physician, despite having them two to three times a week. The ALJ noted that Plaintiff did not appear to require much treatment such as frequent hospitalizations. (Tr. 20, 22).

What the ALJ does not take into account is Plaintiff potentially missing work at least once a month due to migraines. At the evidentiary hearing, the VE testified that, "Even one unscheduled absence, particularly in unskilled positions, that occur in a month that – over two consecutive months would result in termination or two or more in a given month would also result in termination." (Tr. 68). The ALJ failed to discuss the possibility of Plaintiff missing work despite her migraines being "controlled." Therefore, this requires remand.

Third, Plaintiff argues that the ALJ ignored Plaintiff's testimony and, therefore, erred in assessing Plaintiff's credibility. Plaintiff alleges that her testimony is consistent with the medical evidence and should have been given more weight.

SSR 16-3p supersedes the previous SSR on assessing the reliability of a claimant's subjective statements. SSR 16-3p became effective on March 28, 2016 and is applicable here. 2017 WL 5180304, at *1. The new SSR eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." SSR 16-3p continues to require the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529. Ibid. at *10.

The new SSR does not purport to change the standard for evaluating the claimant's allegations regarding her symptoms. Thus, prior Seventh Circuit precedents continue to apply.

The findings of the ALJ as to the accuracy of the Plaintiff's allegations are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

The issue here is not that the ALJ ignored Plaintiff's testimony because the ALJ did mention Plaintiff's subjective complaints, although somewhat briefly. The issue here regards an ALJ "relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt*, 395 F.3d at 746-47. The ALJ does give reasons against Plaintiff's complaints and assertions. However, what the ALJ's decision does is point much to the evidence supporting her decision and, in effect, essentially negates the small mention of the evidence against her decision, such as explained in Plaintiff's first issue above. The record contains years of medical records regarding Plaintiff's impairments. It is both unfair and inaccurate to not integrate those medical records more thoroughly to create an adequate representation of Plaintiff's complaints in comparison to the medical evidence.

The ALJ referenced some of Plaintiff's activities which also shined a negative light on Plaintiff's credibility. These activities included traveling, painting, lifting items, attending a class, and having lost weight from being more active in the spring. This, however, does not change the

need for the ALJ to discuss the evidence against her decision. The ALJ did not adequately articulate the evidence against her decision. As a result, the ALJ failed to give reasons as to why Plaintiff's testimony was not credible despite the presence of objective notes describing evidence contrary to the ALJ's decision. This requires remand.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry*, 580 F.3d at 475, internal citations omitted. Here, the aforementioned errors leave a gap in the ALJ's decision. Therefore, the Court must conclude that the ALJ failed to build the requisite logical bridge here.

This Memorandum and Order should not be construed as an indication that the Court believes Plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: July 17, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**